# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATH STEVEN CASSIDY,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:18-cv-00984-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Heath Steven Cassidy ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1]     Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2]     The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6, 8.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on October 15, 2015. AR 140-42, 143-46.[3] Plaintiff alleged that he became disabled on July 15, 2014, due to crippled right leg--shin snapped and eight screws and steel plate, crippled left leg shattered and severed, almost paralyzed from waist down, major back surgery, major arthritis from back down to ankles, and difficulty sitting and standing. AR 18, 157. Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. AR 77-81, 86-90. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Sharon Madsen held a hearing on April 6, 2017, and issued an order denying benefits on May 3, 2017. AR 12-24, 29-53. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on April 6, 2017, in Fresno, California. Plaintiff appeared with his attorney. Impartial Vocational Expert ("VE") Jose Chaparro also appeared. AR 31.

In response to questioning by the ALJ, Plaintiff testified that he lives with his mother. He has a driver's license and drives. AR 33. He has a GED and attended a 15-week course learning to repair VCRs, televisions, and refrigerators. AR 34.

When asked about his daily activities, Plaintiff testified that he needs help putting on his socks and has his mother helps him use the restroom. He does not really do any household chores, but he might microwave something easy. He tries to attend church as much as he can. On a typical day, he gets up at about six and it takes him a couple hours to get in the shower. After that, he is basically back in bed watching TV and sometimes takes naps. AR 34-36.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

       When asked about his work history, Plaintiff testified that he worked for Infinity Fasteners, which is hardware for contractors, like nuts and bolts. Plaintiff worked in the warehouse for ten years and then was moved inside for four years. When in the warehouse, he used a forklift. When he was inside, it was both clerical and lifting. Plaintiff explained that he would have to go back and forth to the warehouse with orders and it was a lot of sitting and standing. AR 36.

       When asked about his pain, Plaintiff testified that the pain in his back is constant and in his lower back where he had surgery. He had surgery in 1995, which helped for a little while. He returned to hard labor for years, but the pain slowly, gradually became worse. Sitting and standing both hurt, but he is pain free when he lies on his back. He takes pain medications, methadone and Elavil, which help. He also uses a heating pad. His doctor has not talked about sending Plaintiff to a neurosurgeon and he is just continuing with his medications. AR 37-39.

       When discussing his legs, Plaintiff reported that a steel plate was not removed from his right leg. He was in an accident that injured his legs in 1987. The pain in his legs is constant, but his left leg is probably worse. AR 39-40.

       When asked about his abilities, Plaintiff testified that he cannot bend over and pick up anything more than 10 pounds. He can sit for about 5 minutes before he has to get up. He can stand about 10-15 minutes before he has to sit down. He can walk about a block. He has a cane, but it was not prescribed by a doctor. He uses the cane when he goes out of the house. When he is in the house, he uses a walker. AR 40-41.

       In response to questions from his attorney, Plaintiff testified that he was prescribed a walker in May 2015. When he was working, he would occasionally use a cane, and has been using a cane for about five or six years. It is easier to use the walker inside the house and the cane outside the house. AR 42-43. Plaintiff reported that he lies down about six hours a day and elevates his knees because his ankles get swollen. He has been taking methadone for fourteen years, which was prescribed by Dr. Kirby. Plaintiff has been seeing Dr. Kirby for eighteen years. He did not start seeing Dr. Kirby until 1999, doing hard labor between his surgeries in 1987 and that time. The muscles in his legs are deteriorating and he has sharp pain in his legs. AR 43-44.

Plaintiff further testified that he could sit about six hours in eight-hour day, but he has to get up and down. He would have to lie down at least six hours during an eight-hour workday, leaving two hours for sitting and standing. AR 44. Plaintiff does not do any yard work or household chores and his mother does his laundry. He does not drive very often, only if he or his mother need to go to the doctor. He probably drives four or five times a month. He has side effects from his methadone. It makes him sleepy and he cannot drive. AR 45-46.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Jose Chaparro. The VE characterized Plaintiff's past work as stores, laborer (the Dictionary of Occupational Titles ("DOT") title for warehouse worker), and order clerk. AR 48. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education and work background who could lift/carry 20 pounds occasionally, 10 pounds frequently, could sit/stand/walk six to eight hours with occasional stooping, crouching, crawling, climbing, kneeling and balancing. The VE testified that this person could perform Plaintiff's past work as an order clerk. AR 48.

For the second hypothetical, the ALJ asked the VE to add that the person needed to avoid concentrated cold and no climbing ladders, ropes, or scaffolds and also needed a sit-stand option where the sitting and standing was necessary but no more frequently than hourly. The VE testified that this person would be able to do the work of order clerk as per the DOT, but not as performed. AR 49.

For the third hypothetical, the ALJ asked the VE to assume sedentary, 10 pounds, sit six, stand/walk two and same postural. The VE testified that this person could perform Plaintiff's past work as an order clerk only per the DOT not as customarily performed. AR 49.

For the fourth hypothetical, the ALJ asked the VE to add to the last hypothetical that the person needs an additional two to four breaks of 30 minutes per day. The VE testified that there would be no past work and no other work. AR 49.

Following questioning by the ALJ, Plaintiff's counsel asked the VE to assume a person who could frequently lift or carry less than 5 pounds, occasionally 5 pounds, and rarely 10 pounds, could sit about four hours and stand and walk less than one hour in an eight-hour work day and would have to

4

take unscheduled breaks.  The VE testified that this hypothetical person could not perform Plaintiff's past work or any work in the national economy.  AR 51-52.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-24.  Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 15, 2014, his alleged onset date.  The ALJ identified lumbar degenerative disc disease, status post remote decompression, and remote fracture bilateral lower legs with residual pain as severe impairments.  AR 17.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 18.  Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work.  Specifically, Plaintiff could lift/carry 10 pounds occasionally and 10 pounds frequently, could sit six hours in eight-hour workday, stand/walk two hours in an eight-hour workday, occasionally stoop, crouch, crawl, climb, kneel and balance, but could not climb ladders, ropes or scaffolds and must avoid exposure to concentrated cold.  AR 18-23.  With this RFC, the ALJ found that Plaintiff could perform his past relevant work as an order clerk.  AR 23-24.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  AR 24.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

5

considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred by (1) improperly rejecting Plaintiff's pain testimony; and (2) improperly rejecting the medical opinion of Plaintiff's treating physician.

### A. Plaintiff's Subjective Complaints of Pain

Plaintiff first argues that the ALJ erred by failing to provide clear and convincing reasons based on substantial evidence to disregard Plaintiff's pain testimony. In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 19. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.

As an initial matter, Plaintiff complains that the ALJ erred because she failed to explain which of Plaintiff's statements were inconsistent with the record and why they were inconsistent. To support this asserted error, Plaintiff relies in part on *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). (Doc. No. 17 at 17.) In *Brown-Hunter*, the Ninth Circuit reiterated its position that in evaluating a claimant's subjective complaints, an ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (citation omitted). The ALJ's statement did not meet the relevant standard where the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Id.* The Ninth Circuit faulted the ALJ for failing to "identify specifically which of [the claimant's] statements she found not credible and why." *Id.*

The Court finds the instant matter distinguishable from *Brown-Hunter*. In *Brown-Hunter*, "the ALJ stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.'" 806 F.3d at 493. Here, however, the ALJ specified the claimant's testimony she discounted, including Plaintiff's complaints of "major pain daily along with legs," "constant pain in his low back and legs, left greater than right," "muscle atrophy in his ankles and legs," and "use[ of] a cane all the time and a walker when he goes out." AR 18-19. The ALJ then determined that the severity of these allegations was not supported by the objective medical evidence, particularly the clinical findings. These findings included treatment records from Dr. John Kirby, MRI results, a

consultative examination, and a neurological evaluation. AR 19-22. Furthermore, the ALJ identified specific inconsistencies in the record that undermined Plaintiff's subjective complaints. These statements included Plaintiff's ability to return to work after fracturing his legs in an accident as well as after a workers' compensation injury, and his statements regarding his daily activities. AR 22.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony. First, as noted, the ALJ discounted Plaintiff's statements based on the objective medical evidence and a determination that the clinical findings were inconsistent with the severity of Plaintiff's complaints. AR 64. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As indicated, the ALJ discussed the medical record, including an MRI of the lumbar spine completed in December 2014, which showed degenerative changes in the lumbar spine. AR 19-20, 230. The ALJ expressly highlighted the MRI findings in assessing Plaintiff's subjective complaints, noting that the "MRI of the lumbar spine only showed small or mild disc bulging and no major stenosis," which "diminish[ed] the claimant's persuasiveness." AR 22. Further, the examining neurosurgeon, Dr. Robert L. Simons, summarized the MRI as showing "[n]o major stenosis" and "small" and "mild" disc bulges. AR 247. The ALJ acknowledged Dr. Simons' evaluation of the MRI, including Dr. Simons' related determination that he could not correlate a lumbar spinal defect to any of Plaintiff's reported symptoms and instead suspected "underlying psychosocial issues." AR 21, 247.

The ALJ also considered Dr. Simons' findings that Plaintiff's physical examination was "unremarkable other than multiple surgical scars." AR 21, 246. The ALJ further considered Dr. Simons' objective findings that Plaintiff's cervical spine range of motion was full, the thoracic spine was negative, straight leg raising was resisted to 45° bilaterally, hip range of motion was good, motor examination was intact in the upper extremities, lower limbs showed ratchet weakness proximally and distally, Plaintiff was able to move all major joints, but tended to resist moving his dorsiflexors and plantar flexors, reflexes were present at 2+ at the biceps, triceps and knees, ankle reflexes were 1+, plantar responses were neutral and sensation was intact. AR 21, 246-47.

8

1    Additionally, the ALJ summarized clinical findings from an orthopedic consultative
2    examination in March 2015. During this examination, Plaintiff sat comfortably in the examination
3    chair, got up and out of the chair, walked around the examination room, and got on and off the table
4    without difficulty. AR 20, 237. On physical examination, Plaintiff's Romberg test was normal,
5    tandem walking was satisfactory, he could get up on his toes and on his right heel, but he had limited
6    range of motion of the left ankle. He was able to squat halfway and had a slightly abnormal heel/toe
7    gait pattern on the left side, which Plaintiff attributed to stiffness of his calf musculature. The
8    examiner did not detect a limp and no assistive devices were present or prescribed. Plaintiff's cervical
9    spine range of motion was within normal limits, but he had reduced range of motion of the lumbar
10   spine, pain at the location of his scar on the lumbar spine with pain radiating into the waist area and
11   buttocks. He was able to bend over to within eight inches of touching the floor. Straight leg raise was
12   90/90 bilaterally in the sitting and supine positions. Plaintiff's range of motion of the shoulders,
13   elbows, wrists, hands, hips and knees was within normal limits, with some reduction in the left ankle.
14   His grip strength was 5/5 bilaterally with normal motor strength. AR 20, 237-39.

15   The ALJ also considered and summarized records after Plaintiff's alleged onset date from his
16   treating physician, Dr. John F. Kirby. As evidenced by the ALJ's summary, these records include
17   very few objective findings to support Plaintiff's allegations of disabling impairments. Of those, the
18   records generally describe only scarred legs and an antalgic gait or limp. AR 21, 223, 268-70.

19   Second, in addition to the objective medical evidence, the ALJ also discounted Plaintiff's
20   subjective complaints of pain based on his work history, noting that Plaintiff "was able to return to
21   work and continued to work until July 2014," which was after the accident that injured his legs in
22   1986 and a worker's compensation injury in 1995. AR 22, 37, 39, 43. An ALJ may properly consider
23   the circumstances of a claimant's return to work following successful treatment in evaluating
24   subjective complaints of pain. *See*, *e.g.*, *Guzman v. Colvin*, No. 1:13-cv-01243-SKO, 2015 WL
25   75129, at *9 (E.D. Cal. Jan. 6, 2015) (finding ALJ properly considered evidence that claimant returned
26   to work after successful treatment for back condition and no indication that she could not return to
27   work after a second injury had healed properly).
28

Third, the ALJ considered Plaintiff's reported activities of daily living. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–1113 (9th Cir. 2012). Here, the ALJ acknowledged that Plaintiff's activities were limited, but that he was still able to drive, bathe, cook, do light laundry, go shopping with his mother, watch television, work on the computer, read and drive to his doctor appointments and to his mother's doctor appointments four or five times per month. AR 21, 33-34, 35, 45, 165-66, 236. Even where Plaintiff's activities suggest some difficulty functioning, as noted by the ALJ, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197; *Molina*, 674 F.3d at 1115. Moreover, even if the ALJ explained her reasoning with "less than ideal clarity," the Court must uphold it where the ALJ's "path may reasonably be discerned." *Molina*, 674 F.3d at 1121.

### B. Plaintiff's Treating Physician Opinion

Plaintiff next argues that the ALJ failed to provide specific and legitimate reasons to reject the opinions of Plaintiff's long-time treating physician, Dr. John Kirby. (Doc. No. 17 at 19-22.)

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling

weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

On May 15, 2015, Dr. Kirby completed a Physical Residual Function Capacity Medical Source Statement form. Dr. Kirby indicated that he had been treating Plaintiff since August 1999. He identified Plaintiff's most significant clinical findings and objective signs as multiple scars on both atrophic legs. AR 264. Dr. Kirby opined that Plaintiff could occasionally lift/carry less than five pounds, rarely lift/carry 5 or 10 pounds and never lift/carry 15 or 20 pounds. AR 264-65. Plaintiff could not walk one city block or climb steps. He also had problems with stooping, crouching and bending. He would need to lie down/recline less than 1 hour in 8-hour workday, and he could sit about 4 hours and stand/walk about 2 hours in an eight-hour workday. Plaintiff could not push and pull leg controls for six or more hours per day and could not climb stairs, ladders, scaffolds, ropes or ramps. His pain would frequently interfere with attention and concentration needed to perform simple work tasks. Dr. Kirby opined that Plaintiff would be off task about 20% of an 8-hour workday, would be absent from work 2-3 days per month, and would be unable to complete an 8-hour workday, 5 days or more per month. AR 265-67.

On April 17, 2017, Dr. Kirby completed a second Physical Residual Function Capacity Medical Source form. Dr. Kirby identified Plaintiff's most significant clinical findings and objective signs to include an abnormal MRI of his back and numerous scars on both legs. AR 272. Dr. Kirby opined that Plaintiff could frequently lift/carry less than 5 pounds, occasionally lift/carry 5 pounds, rarely lift/carry 10 pounds and never lift/carry 15 or 20 pounds. AR 272-73. Dr. Kirby again indicated that Plaintiff could not walk one city block and could not climb stairs, ladders, scaffolds, ropes or ramps. He also had problems with stooping, crouching and bending. He would need to lie down/recline about 1 hour in an 8-hour workday, but he could sit about 4 hours and stand/walk less than 1 hour in an 8-hour workday. He required an assistive device for all surfaces, but he could push and pull arm or leg controls from a sitting position for six or more hours per 8-hour workday. However, he could not climb. His pain would frequently interfere with the attention and concentration needed to perform simple work tasks. AR 274. Dr. Kirby further opined that Plaintiff would be off

task more than 30% of an 8-hour workday, likely would be absent 5 days or more per month, and likely would be unable to complete an 8-hour workday, 5 days or more per month. AR 275.

In this instance, the opinions of Dr. Kirby were contradicted by the consultative orthopedic examiner, Dr. Dale Van Kirk, who opined that Plaintiff could stand and/or walk six hours out of an eight-hour day, sit without restriction, did not medically require an assistive device, could lift and carry 10 pounds frequently, 20 pounds occasionally, but was limited to occasional postural activities and should not be required to work in an extremely cold and/or damp environment. AR 235-41. Dr. Kirby's opinions also were contradicted by Dr. Simons, who indicated that Plaintiff was precluded only from heavy physical work. AR 246-47. Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject the opinions of Dr. Kirby.

In evaluating Dr. Kirby's opinions, the ALJ reasoned as follows:

> The undersigned gives the opinion of Dr. Kirby little weight, as it is too restrictive and not fully supported by the totality of the evidence, which renders it less persuasive. For example, the claimant's MRI, showed small to mild disc bulging and no major stenosis (Exhibit 3F pp. 2-4). Dr. Van Kirk, who is an orthopedic surgeon, found no limp, some decreased range of motion in lumbar spine, slight pain over the knees, slight pain of the tibias, full range of motion of the right ankle and foot, and slight pain of left ankle with some decreased range of motion of the left ankle. He had normal gait and normal motor strength (Exhibit 4F). Additionally, Dr. Simons, the neurosurgeon, found straight leg raise to 45 degrees, hip range of motion was good, no neurological deficits, full motor strength to upper extremities, some ratchet weakness of lower extremities, and intact sensation (Exhibit 5F). Moreover, Dr. Kirby's treatment of the claimant has been essentially conservative in nature.

AR 23.

As stated above, Plaintiff asserts that the ALJ erred in his evaluation of Dr. Kirby's opinion. The Court disagrees and finds that the ALJ provided specific and legitimate reasons for discounting Dr. Kirby's opinion.

The ALJ first discounted Dr. Kirby's opinion because it was not supported by the MRI findings showing small to mild disc bulging and no major stenosis. AR 23. A treating physician's opinion may be discounted if not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that

opinion is brief, conclusory, and inadequately supported by clinical findings."); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (same); *see also Trevizo v Berryhill*, 871 F.3d 664, 675 (9 h Cir. 2017) (finding treating physician's opinion entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"). In this instance, the ALJ relied on the December 2014 MRI results showing small to mild disc bulging and no major stenosis. AR 23, 229-31. Plaintiff complains that the ALJ mischaracterized the MRI by failing to recognize evidence of nerve root impingement on both S1 nerve root and both exiting L5 nerve roots. (Doc. 17 at 20.) However, it is not apparent that the ALJ mischaracterized the MRI findings given that the reviewing neurosurgeon also characterized the December 2014 MRI as follows: "At L3-4, there is a *small* foraminal disc bulge on the right. At L4-5, there is a *mild* disc bulge. At L5-S1 there is a *mild* central disc bulge. *No major stenosis*." AR 247 (emphasis added).

Next, the ALJ discounted Dr. Kirby's opinion based on the consultative examinations completed by Drs. Van Kirk and Simons. AR 23. An examining physician's opinion can constitute substantial evidence to reject a treating physician's opinion if the examining physician's opinion "rests on his own independent examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence") (citations omitted); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinion of an examining physician may constitute substantial evidence to discount a treating physician's opinion). Here, both examining physicians completed independent physical examinations and made clinical findings regarding Plaintiff's limitations that were not as extreme as those identified by Dr. Kirby. Dr. Van Kirk found on examination that Plaintiff had no limp, some decreased range of motion in lumbar spine, slight pain over the knees, slight pain of the tibias, full range of motion of the right ankle and foot, and slight pain of left ankle with some decreased range of motion of the left ankle, and normal motor strength. AR 237-39. Whereas Dr. Simons found straight leg raising to 45 degrees, hip range of motion was good, no neurological deficits, full motor strength to upper extremities, some ratchety weakness of lower extremities, and intact sensation, determining that Plaintiff could not engage in heavy physical work. AR 22, 23, 246-47.

Finally, the ALJ assigned less weight to Dr. Kirby's opinion because treatment provided by Dr. Kirby was conservative in nature. AR 23. A conservative course of treatment can also justify discounting a treating physician's finding of total disability. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (noting that treating physician's conservative course of treatment was not the sort of recommendation one would expect to accompany a finding that the claimant was totally disabled). Here, the ALJ cited evidence that Plaintiff was treated only with pain medications, which is supported by substantial evidence in the treatment record. AR 19, 221, 223-24, 226-27, 268-70. The ALJ also noted in her decision that the neurosurgeon believed that lumbar spine surgery was unlikely to alleviate Plaintiff's pain and symptoms, which appeared related to underlying psychosocial issues. AR 21, 247.

Plaintiff complains that the ALJ committed reversible error in assigning weight to Dr. Kirby's opinion by not considering the factors set forth in 20 C.F.R. § 404.1527(c)(2), which include the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency and specialization. *Id.* at § 404.1527(c)(2)–(6). (Doc. No. 17 at 20, 21.) However, in evaluating Dr. Kirby's opinion, the ALJ noted in her decision that Dr. Kirby was Plaintiff's treating physician in physical medicine and rehabilitation, had been treating Plaintiff since at least August 2008, and had treated Plaintiff on multiple occasions in 2014, 2015 and 2016 after the alleged onset date. AR 19, 21, 22. The ALJ also considered whether Dr. Kirby's opinion was supported by the totality of the evidence and consistent with other evidence in the record. AR 23. Accordingly, the Court does not find reversible error.

Plaintiff argues for a different result, but where there are contradictory opinions in the record, it is for the ALJ to determine credibility and resolve the conflict. *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1010. Where the evidence can reasonably support either affirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Garrison*, 759 F.3d at 1010. The ALJ did not err in assigning lesser weight to Dr. Kirby's opinion.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court

14

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Heath Steven Cassidy.

IT IS SO ORDERED.

Dated: **February 20, 2020**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE